# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID ANTHONY MCKINNEY, )
)
       Petitioner, )
)
v. ) 1:19CV721
)
KELVIN T. KING, )
)
       Respondent. )

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, submitted a petition under 28 U.S.C. § 2241 for a writ of habeas corpus (Docket Entry 1),[1] a supporting memorandum (Docket Entry 12), and a motion seeking an injunction (Docket Entries 10-11). Respondent then filed an answer (Docket Entry 15), a motion for summary judgment (Docket Entry 16), and a supporting brief (Docket Entry 17). Petitioner, in turn, filed a motion for default judgment (Docket Entry 19), a response (Docket Entry 20) to the motion for summary judgment, and a declaration (Docket Entry 21). Respondent has also filed a response to Petitioner's motion for default judgment. (Docket Entry 22.) This matter is ready for a ruling.

## Background

Petitioner was and is subject to three separate sets of judgments:

**1994 Federal Judgment:** In March of 1994, Petitioner was convicted in this Court after a trial by jury of conspiracy to receive and dispose of stolen firearms shipped in interstate commerce and two counts of possession of firearms in commerce after a felony conviction,

---

[1] Unless otherwise noted, all record citations are to case no. 1:19CV721.

and was sentenced in May of 1994 to 340 months of imprisonment. (Case No. 2:93-CR-267-1, Docket Entries 61 and 81; *id.*, 5/19/1994 Minute Entry.) Judgment was entered on June 3, 1994. (*Id.*, Docket Entry 81.) Petitioner's appeal was unsuccessful. *United States v. McKinney*, 70 F.3d 113 (4th Cir. 1995).

**1994 State Judgments:** On August 4, 1994, in the Superior Court of Guilford County, Petitioner was convicted after a trial by jury of three separate offenses: (1) robbery with a dangerous weapon in case no. 93 CRS 31481; (2) second-degree kidnapping in case no. 93 CRS 31480; and (3) second-degree kidnapping in case no. 93 CRS 31479. (Docket Entry 17, Ex. A at 6-17.) Petitioner was sentenced to 30 years of imprisonment in case no. 93 CRS 31481, and to 20 years of imprisonment each in cases 93 CRS 31480 and 93 CRS 31479. (*Id.*) Each of Petitioner's sentences were to run consecutively beginning with the 30-year sentence in 93 CRS 31481, progressing to the 20-year sentence in 93 CRS 31480, and finishing with the second 20-year sentence in 93 CRS 31479. (*Id.*) The judgment in 93 CRS 31481 provided that the 30-year sentence would "begin at the expiration of all sentences which [Petitioner] is presently obligated to serve in any jurisdiction." (*Id.* at 6 (all caps removed).) Thus, the combined sentence corresponding to the 1994 state judgments was 70 years of imprisonment, to begin after Petitioner completed all other pending sentences. Petitioner did not file a direct appeal from the 1994 state judgments.

**1999 State Judgment**: On March 15, 1999, in the Superior Court of Guilford County, Petitioner pled guilty to one count of second-degree murder in case no. 97 CRS 23467, which was consolidated for sentencing purposes with seven other felonies. (*Id.* at 18-21.)

2

The parties agreed to a sentence of 40 years, which was to begin "at the expiration of 93 CRS 31481 [the 1994 robbery with a dangerous weapon conviction], but concurrent with 93 CRS 31480 (and 93 CRS 31479)." (*Id.* at 21.) The Court entered judgment consistent with the parties' agreement. (*Id.* at 18-21.) Thus, the 1999 judgment, when commencing after completion of Petitioner's 30-year robbery conviction from 1994, also led to a cumulative state sentence of 70 years. Petitioner did not pursue a direct appeal from the 1999 state judgment.

**The Relationship Between the State and Federal Charges:** Returning to the events of 1993, Petitioner was indicted on his state charges on April 19, 1993. (*Id.* at 22-30.) Shortly thereafter, the United States obtained an indictment against Petitioner on December 1, 1993, and this Court issued a writ of habeas corpus *ad prosequendum* the next day. (Case No. 2:93-CR-267-1, Docket Entries 1, 6 and 7.) Petitioner remained in federal custody throughout his trial, conviction, and judgment. (Case No. 2:93-CR-267-1, Docket Entries 61 and 81; *see also* Docket Entry 17, Ex. A at 1-5.) Petitioner then returned to state court, where he was tried and convicted in case numbers 93 CRS 31479-81 on August 4, 1994, and judgments were entered the following day. (*See* Docket Entry 17, Ex. A at 6-17, 31-33.)

As noted above, the judgment in 93 CRS 31481 expressly provided that it would begin "at the expiration of all sentences which [Petitioner] is presently obligated to serve in any jurisdiction." (*Id.* at 6-7 (all caps removed).) When that judgment was obtained, Petitioner was "presently obligated" to serve his federal sentence, so Petitioner was transferred to federal custody. Petitioner began serving his federal sentence on August 29, 1994 and received jail credit of 752 days. (*Id.* at 271.)

3

While Petitioner was serving his federal sentence, the state indicted him on July 7, 1997 for first-degree murder of Rudolpho Vanenzuela Cuesta. (*Id.* at 34.) As Petitioner was in federal custody at that time, state authorities submitted a "request for temporary custody" so that Petitioner could face the new state charges. (*Id.* at 35.) Petitioner eventually pled guilty to second-degree murder. (*Id.* at 18-19.) Petitioner completed his federal sentence on June 16, 2017. *See* https://www.bop.gov/inmateloc/ ("Released On: 06/16/2017"). He was transferred to state custody and admitted on June 19, 2017. (Docket Entry 1, Ex. at 25.)

**Relevant Post-Conviction Proceedings**: Petitioner has filed numerous motions and petitions relating to and/or challenging his 1994 and 1999 state judgments. The first of which the Court is aware dates to November 29, 2017, when Petitioner filed a "Motion for Jail Credit" in Guilford County Superior Court, alleging that he should be entitled to a jail credit of approximately seventeen months for time spent in prison from February of 1993 to August of 1994, and that the credit would "shorten [his] term of incarceration," because he was due for a custody classification and parole hearing. (Docket Entry 17, Ex. A at 36-45.) The motion did not allege that Petitioner was being illegally detained or that he was entitled to immediate release. Petitioner subsequently filed in the same court a "Motion Seeking Jail Credit Time," requesting the same relief (the "Jail Credit Motion"). (*Id.* at 46-49.) The Court denied the Jail Credit Motion, explaining,

> It appears that [Petitioner] contends that he was in state custody followed by federal custody followed by a return to state custody and that the entire time was considered as credit for the federal sentence. [Petitioner] appears to want a duplicate grant of credit for the time served pre-trial which is tantamount to a frivolous request.

(*Id.* at 50.)

4

The order referenced a letter sent to Petitioner by the Guilford County Clerk's office, which explained how his jail credit had been allocated:

> Our records indicate that you were arrested on or about February 15, 1993. This office has confirmed with the Federal Authorities that you were convicted in Federal Court on May 19, 1994 and received credit towards that sentence beginning on February 15, 1993. Your file reflects that your State sentences were ordered to run at the expiration of any sentence in any jurisdiction; therefore, per statute, credit for the same days may not be applied to multiple consecutive sentences.

(*Id.* at 51.) On August 1, 2018, Petitioner filed a notice of appeal from the trial court's order. (*Id.* at 52.) However, it does not appear that Petitioner pursued the appeal in the North Carolina Court of Appeals.

Next, Petitioner filed a grievance through the North Carolina Department of Public Safety's Administrative Remedy Procedure ("ARP"). (Docket Entry 1, Ex. at 27.) In the grievance, dated July 12, 2018, Petitioner first raised allegations which vaguely resemble the allegations in the present petition. The grievance reads, in relevant part:

> Was I designated by the North Carolina Department of Correction to serve my state sentence concurrently with my federal sentence in a federal prison? I was sent to federal custody by the NC DOC in 1994, who authorized this change of primary jurisdiction between two conflicting sovereigns? And if I was designated to serve my state sentence in a federal prison why was I or the federal authorities not told?

(*Id.*) The prison responded to the grievance on July 18, 2018, explaining to Petitioner that "[t]he Judge who presided over your case had the authority to decide which sentence you served first. In your case they elected to have you serve the federal sentence first." (*Id.* at 28.) The response further explained that Petitioner was transferred to state authorities at the end

5

of his federal sentence because his "state sentence was longer than [his] federal sentence."[2] (*Id.*) Petitioner appealed, and the grievance was eventually dismissed. (*Id.* at 30.)

Finding no success through the ARP, Petitioner next filed a "Writ of Habeas Corpus/False Imprisonment" with the North Carolina Court of Appeals on October 9, 2018. (Docket Entry 17, Ex. A at 53-141.) In it, Petitioner contended that the state "made an error" in sending Petitioner to federal custody after it had "begin [sic] the obligation in Case No. 93 CRS 031481." (*Id.* at 64.) Therefore, he argued, the state relinquished its "primary jurisdiction over Petitioner's body" and that he had "endured over 24-years of illegal restraint by the NC DPS." (*Id.* at 64-65.) The Court of Appeals summarily denied this petition by order dated October 12, 2018. (*Id.* at 142.)

Petitioner next returned his attention to the state trial courts. Petitioner filed two "Memorandums of Law" in Guilford County Superior Court, on December 5, 2018 and January 30, 2019, respectively, raising similar claims. (*Id.* at 143-154.) In its February 2019 order denying relief, that court explained that, "[a]s clearly as the Court can understand, [Petitioner] complains about not receiving pretrial confinement credit toward his state court convictions." (*Id.* at 156.) The court reviewed the convictions and sentences and found that Petitioner "is entitled to 77 days credit toward his state court convictions" due to time spent in detention that had not been credited to any sentence. (*Id.*) The court awarded 77 days credit, but denied all other claims for relief. (*Id.* at 156-157.)

---

[2] At the time, the records maintained by the North Carolina Department of Correction mistakenly reflected that Petitioner's state sentence ran concurrently to his federal sentence, despite the clear language of the 1994 state judgments. This discrepancy is discussed in more detail below.

6

Petitioner then filed a petition in Guilford County Superior Court on May 4, 2020, this one entitled "habeas corpus ad subjiciendum [sic] right to action to compel compliance with appellate court order in November 20, 2001." (*Id.* at 187-269.) In it, Petitioner contended that his state sentence terminated "on 29 August 1994 when the [North Carolina Department of Correction] relinquished its jurisdiction over the 'body' of Petitioner by the action of transferring him physically to federal prison to serve his federal obligations." (*Id.* at 192.)

The superior court again rejected Petitioner's claims by order dated May 8, 2020. (*Id.* at 270.) The court was concerned that Department of Correction records mistakenly showed that Petitioner's state court sentence in 93 CRS 31481 began on August 4, 1994, effectively concurrent with (rather than consecutive to) Petitioner's federal sentence. (Docket Entry 1, Ex. at 31 (mistakenly showing Petitioner's sentence in 93 CRS 31481 as beginning on August 4, 1994).) The court highlighted its concern that the North Carolina Department of Correction

> may have treated this 70-year state sentence as some sort of default to run concurrently with the federal sentence. And if so, it appears [Petitioner] would receive a tremendous benefit in that his total time for heinous crimes in both state and federal jurisdictions is being reduced in a manner clearly at odds with Judge McHugh's intent and with an anticipated release date of 2029 (only 12 years added to his federal time).

(Docket Entry 17 at 271; *see also* Docket Entry 1, Ex. at 33 (showing an erroneous projected release date of July 26, 2029).) The court denied the petition and ordered "that the North Carolina Division of Adult Correction review [Petitioner's] sentencing judgments . . . and make any adjustments in the nature of concurrent or consecutive sentencing as required by Judge McHugh's judgments." (Docket Entry 17 at 271-272.)

7

Consistent with this order, the North Carolina Department of Correction records now correctly reflect that Petitioner's sentence in 93 CRS 31481 began on June 16, 2017, after his federal sentence had ended, as required by Judge McHugh's judgment in 93 CRS 31481. (*Id.* at 291-292.) Petitioner filed a notice of appeal from the trial court's order denying his petition for writ of habeas corpus (*Id.* at 289-290) but does not appear to have prosecuted that appeal in the North Carolina Court of Appeals. Petitioner filed the present § 2241 petition (Docket Entry 1) on July 19, 2019, and a memorandum of law (Docket Entry 12) on June 11, 2020.

### **Petitioner's Grounds**

Petitioner raises four grounds. First, he asserts a violation of his right to due process because "[t]he NC DOC, Guilford County Superior Court, and the NC Court of Appeals . . . denied [him] the application of the primary jurisdiction doctrine. This denial has resulted in false imprisonment for more than 25-years." (Docket Entry 1, Ground One.) In his second, Petitioner asserts an equal protection violation on the ground that "[t]he NC DOC illegally restrained [him] on 6.16.2017 . . . [and] forcefully imprisoned [him] against his will and without his consent or a final judgment order. Through administrative remedy procedures Petitioner was informed that the NC DOC is enforcing a term of imprisonment that does not exist within the files/records of the Clerk of the Guilford County Superior Court." (*Id.*, Ground Two.)

In his third ground, Petitioner asserts a double jeopardy violation because he "completed his term of state imprisonment on 8.29.1994 and was transferred from state jurisdiction to federal jurisdiction. The state DOC relinquished its primary jurisdiction on 8.29.1994, but has been enforcing illegal restraint upon Petitioner for over 25-years. Petitioner is forced to serve a completed sentence obligation twice." (*Id.*, Ground Three.) In his final

8

ground, Petitioner asserts a violation of his Eighth Amendment rights and in support he asserts that he "has been falsely imprisoned by the NC DOC for over 25-years. The NC DOC has refused to release Petitioner after being informed that Petitioner is being illegally restrained of his liberties against his will and without [his] consent." (*Id.*, Ground Four.) As explained below, none of these grounds has merit.

## Discussion

At the core of all of Petitioner's grounds is his assertion that he has already served his 70-year state sentence in the time between his conviction on August 4, 1994 and his transfer to federal custody on August 29, 1994 due to state authorities relinquishing their "primary jurisdiction" over him at that time.³ (*See generally Id.*; Docket Entry 12 at 11 ("Petitioner asserts that all state obligations in Cases Nos. 93 CRS 31479-81, and 97 CRS 23467, expired on 8.24.1994.").) This is not so. As shown by the state court records and Petitioner's own statements in the petition, Petitioner is serving a valid state sentence following the completion of his federal sentence. He has not been illegally restrained or falsely imprisoned, nor is there a jurisdictional issue that warrants granting him any form of relief.⁴

---

³ Petitioner does not meaningfully explain how he could have served the 40-year sentence imposed for second-degree murder under his 1999 state judgment in a 25-day period that predated the imposition of that sentence by roughly five years.

⁴ Respondent contends that the petition is more properly construed as a petition brought pursuant to 28 U.S.C. § 2254, and not 28 U.S.C. § 2241, and that it is time-barred, unexhausted, and without merit. (Docket Entry 17 at 11-18, 22-23.) However, regardless of how the petition is construed, and regardless of whether it is time-barred or unexhausted, it fails on the merits under a de novo standard of review for the reasons set forth herein.

9

**A. Petitioner is serving sentences pursuant to lawful judgments.**

Petitioner's state court records show that he is serving valid sentences. Upon Petitioner's conviction in 1994, the state trial court sentenced Petitioner to three consecutive sentences beginning with the 30-year sentence in 93 CRS 31481, progressing to the 20-year sentence in 93 CRS 31480, and finishing with the second 20-year sentence in 93 CRS 31479. (Docket Entry 17, Ex. A at 6-17.) The judgment in 93 CRS 31481 explicitly provided that its 30-year sentence would begin "at the expiration of all sentences which [Petitioner] is presently obligated to serve in any jurisdiction." (*Id.* at 6.)

At the time judgment was entered, Petitioner was "presently obligated to serve" the 340-month sentence imposed by this Court in case no. 2:93-CR-267. (*Id.* at 1.) Consistent with these judgments, Petitioner served time in federal prison from August 29, 1994 to June 16, 2017, at which time he was released into state custody to begin serving his sentence in 93 CRS 31481. (*Id.* at 271.) Despite his allegations to the contrary, Petitioner is serving a valid state sentence in accordance with the state court judgment. Nothing Petitioner has identified in any of his post-conviction proceedings (such as the ARP proceeding or the records maintained by the North Carolina Department of Correction) change this.

**B. Petitioner's "primary jurisdiction" argument is meritless.**

Petitioner advances a meritless argument regarding the state's relinquishment of its "primary jurisdiction" over his body, which he alleges entitles him to immediate release. (Docket Entry 1, Grounds One and Three.) Petitioner argues that his state sentence ended in late August of 1994 when he was transferred to federal authorities. (*Id.*, Ground Three.) Petitioner's view of the facts and of primary jurisdiction jurisprudence is incorrect.

10

Generally, "when an inmate is facing sentences imposed by both federal and state authorities, the sovereign that first arrested the inmate retains primary custody over him until that sovereign's imposed sentence is satisfied." *Allen v. Stansberry*, No. 1:09CV631 GBL JFA, 2010 WL 3671392, at *2 (E.D. Va. Sept. 14, 2010) (citing *United States v. Evans*, 159 F.3d 908, 912 (4th Cir. 1998)). When federal authorities "need to obtain custody over a state inmate to try him for federal crimes, federal authorities usually issue a writ of habeas corpus ad prosequendum." *Id.* "This writ does not change the inmate's primary jurisdiction status but merely allows federal authorities to 'borrow' the inmate for court proceedings[.]" *Id.* (citation omitted). Here, Petitioner takes issue with the fact that North Carolina authorities arrested him, yet he was required to serve his federal sentence first. Petitioner alleges that when the state authorities transferred him to federal custody to serve his federal sentence, they relinquished primary jurisdiction over him, which necessarily meant that his state obligation had been completed.

This theory is baseless, because a sovereign may waive its primary jurisdiction over an inmate. *Trowell v. Beeler*, 135 Fed. App'x 590, 593 (4th Cir. 2005). In order to "relinquish or waive primary jurisdiction after [a prisoner is] sentenced in state court," a state can "deliver him into federal custody for the purpose of beginning his federal sentence." *Id.* at 594 (citations omitted). North Carolina obtained primary jurisdiction over Petitioner upon his arrest by state authorities, and retained primary jurisdiction through the pendency of his federal trial. However, the state yielded that primary jurisdiction over Petitioner after obtaining the 1994 state judgments by delivering him into federal custody for the purpose of beginning his federal sentence. *See Thomas v. Whalen*, 962 F.2d 358, 362 n.7 (4th Cir. 1992) (recognizing that a

11

sovereign with primary jurisdiction can "yield[] that superior jurisdiction right" by permitting the inmate to be incarcerated by another sovereign "without a challenge to [that sovereign's] jurisdiction") (citing *Roche v. Sizer*, 675 F.2d 507, 510 (2d Cir. 1982)).

This view is reinforced by the fact that when state authorities wished to prosecute Petitioner for murder in 1997, they requested temporary custody of him. (Docket Entry 17, Ex. A at 35.) The state's decision to allow Petitioner to serve his federal time first was consistent with, and in fact required by, the 1994 state judgments. (*Id.* at 6 (ordering the judgment in 93 CRS 31481 to begin at the expiration of all sentences Petitioner was then obligated to serve "in any jurisdiction").) That Petitioner served his federal sentence first did not extinguish the state's right to enforce its judgments—indeed, it was a requirement of those judgments. Petitioner has been given credit for the days he served in custody; the only way for Petitioner to satisfy the state judgments is to serve the required prison time.

In essence, Petitioner takes issue with the order in which his sentences were imposed. However, "[a]n individual who has violated the laws of two or more sovereigns may not complain of the order in which he is to serve the various sentences." *Jeter v. Keohane*, 739 F.2d 257, 258 (7th Cir. 1984). "[T]he federal government and a state are perfectly free to make any agreement between themselves concerning which of their sentences will be served first[.]" *Causey v. Civiletti*, 621 F.2d 691, 694 (5th Cir. 1980). Petitioner's arguments to the contrary are meritless and should be rejected. None of his grounds has merit.

## Motion Seeking Injunctive Relief

Next, Petitioner has filed a motion "seeking a[n] injunctive relief order instructing the Warder . . . of the facility where he is now housed, to cease from denying [him] the right of

meaningful access to the court." (Docket Entry 10 at 1.) In support, Petitioner asserts that he has been denied the opportunity "to buy: (1) plain white paper, large legal envelopes, regular sized envelopes, ink writing pens, carbon copying paper; (2) access to a dictionary or the use of a dictionary through the institution library, notary services, copy of legal documents, weight of legal materials such as petitions and motions for the purpose of postage." (*Id.* at 2.) Petitioner states that he is subject to a ten-dollar purchase limit placed upon him by a discipline hearing officer in March of 2020. (*Id.*) Petitioner asks the Court to order the prison to supply him legal materials or to allow him to purchase them, so that he can send the Court a memorandum and exhibits in support of his pending § 2241 motion. (*Id.* at 4.)

This motion should be denied for a number of reasons. First, "[t]o the extent that Petitioner contends that the warden . . . or the staff at [his] institution [of confinement] have restricted his access to the Courts, his argument fails because . . . . [Section] 2241 is the appropriate method for a prisoner to challenge the fact or length of his confinement, but generally not the conditions of that confinement. Accordingly, it appears that Petitioner fails to state a claim upon which relief which may be granted in this proceeding." *Weast v. Entzel*, No. 3:19-CV-4, 2019 WL 540717, at *3 (N.D.W. Va. Jan. 8, 2019). Second, while it is not entirely clear, Petitioner's motion seems to indicate that any restraint along the lines he alleges did not exceed sixty days. (Docket Entry 10 at 2-3.) By his own account, his alleged restrictions began on March 4, 2020 and, given that more than sixty days have passed since then, the issue is now moot. (*Id.* at 2.) Third, and perhaps most importantly, the record also contradicts Petitioner's allegations. Throughout the course of this proceeding, both before and after the alleged disciplinary proceeding, Petitioner has filed with the Court a number of pleadings

13

containing legal citations and legal argumentation. (Docket Entries 1-2, 7, 9-12, 19-21.) Petitioner has also supplied the Court with exhibits. (Docket Entry 1, Ex.) Nothing about any of this suggests that Petitioner was denied access to the Court along the lines he (often vaguely) alleges or that there is additional information that Petitioner could, if permitted, supply to the Court that would support his meritless grounds. The motion should be denied.

### Motion for Default Judgment

Next, Petitioner requests that the Court enter default judgment against Respondent for failure to file a timely response to his § 2241 motion. (Docket Entry 19.) However, Respondent has filed a timely response to Petitioner's motion in the form of a motion for summary judgment and a supporting brief (Docket Entries 16-17), which accurately explains at length (as described above) why Petitioner's petition has no merit. This motion should be denied.

### Conclusion

Petitioner has failed to demonstrate that he is entitled to any form of relief. Neither an evidentiary hearing, nor discovery, nor the appointment of counsel are warranted.

**IT IS THEREFORE RECOMMENDED** that Respondent's motion for summary judgment (Docket Entry 16) be **GRANTED**, that Petitioner's petition (Docket Entry 1), motion seeking injunction (Docket Entry 10), and motion for default judgment (Docket Entry 19) all be **DENIED**, and that Judgment be entered dismissing this action.

_____
Joe L. Webster
United States Magistrate Judge

July 16, 2020
Durham, North Carolina